**STATE of Missouri, Plaintiff–Respondent,**

v.

**Michael GROVES, Defendant–Appellant.**

No. 19140.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 27, 1994.

W.H. Winchester, III, Stephanie M. Gleason, Drumm, Winchester & Gleason, Sikeston, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John R. Watson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Chief Judge.

Michael Groves (Defendant) was found guilty by a jury of possession of a controlled substance with intent to distribute. § 195.211, RSMo Supp.1989. The trial court sentenced him to ten years' imprisonment pursuant to the jury's assessment of punishment.

On appeal Defendant contends the evidence was insufficient to support his conviction. We find the evidence sufficient and affirm the judgment.

## FACTS

On Friday, February 19, 1993, Defendant rented Room 106 at a Sikeston, Missouri, motel, paying for one night's lodging. The next morning, he paid for a second night. Defendant requested no maid service for Saturday.[1]

On Saturday, about 10:30 a.m., motel manager Tina Carroll entered Defendant's room. She testified it was her practice to "go in behind my housekeepers and check their rooms of the mornings," and she believed that the housekeeper had already been in Room 106. She saw housekeeping chores undone, particularly the bed spread was "lying half on the bed and half off." On the floor beneath the bedspread, in the approximately two-foot space between the bed and the wall, Carroll found "a trash bag" that contained clear plastic bags of green material, recognized by Carroll to be marijuana. She then repositioned the bed cover over the marijuana, left Room 106, and called the police department.

---

1. It is unclear from the record when and to whom Defendant requested no maid service. Defense counsel raised a hearsay objection after an investigating officer testified about Defendant's request, and counsel asked that the testimony be stricken. The court instructed the witness, "Just testify as to what was done," but did not directly rule on the objection to the testimony already given and did not rule on the motion to strike. On appeal, Defendant does not complain about the testimony.

Upon their arrival, police officers took up surveillance positions in Room 107 and outside the building. When Defendant returned to the motel around 1:00 p.m., officers approached him and asked that he accompany them to Room 107 where they asked his permission to search Room 106, telling him they had information that marijuana was being kept there. Defendant consented in writing and, using his key, opened the door to Room 106 and admitted the police officers who promptly found the marijuana. After receiving a "Miranda" warning, Defendant told an officer that he had stayed in Room 106 and that no one else had been in the room that he knew of, but he knew nothing of the marijuana.

The marijuana seized weighed 1,316 grams (approximately 2.6 pounds). Police Lt. Robert Gee testified that the marijuana was almost equally divided among three clear plastic "zip lock" freezer bags. The three individual bags were in a white plastic trash bag which, in turn, was inside a white paper sack from a department store. The marijuana had a street value of $40 per quarter ounce or, if sold in pound quantities, $1,000 to $1,500 per pound.

At trial, Defendant testified that he checked into the motel between 5:00 and 6:00 p.m. Friday. Upon entering his room, he turned on the television and used the bathroom. He then approached the bed from the side opposite the wall and pulled back the bedspread, throwing it toward the wall that ran alongside the bed. He said he never walked around to the side of the bed that was near the wall. He lay on the bed and watched television for an hour or so and then left to get something to eat. He returned to the motel and watched television until 1:00 to 1:30 a.m., then went to bed.

Defendant said he got up between 9:30 and 10:00 a.m. on Saturday and left to get coffee and a toothbrush. He returned to the motel for a short time, then left again at approximately 10:30 a.m. Upon his return to the motel at approximately 1:00 or 2:00 that afternoon, police officers approached him and asked to search his room. He agreed after being told that the officers believed marijuana was in his room and that they were getting a search warrant. Defendant said he signed the consent to search because he "had no idea of anything being in the room." Defendant denied taking marijuana into the room and denied ever seeing it there.

## DISCUSSION AND DECISION

■ Defendant was found guilty of possessing a controlled substance with intent to distribute, a violation of § 195.211.1, RSMo Supp.1989. In his single point on appeal, Defendant contends that the evidence was insufficient "to establish actual or constructive possession" of the marijuana. We note that Defendant focuses solely on the possession aspect of the offense; he does not challenge the sufficiency of the evidence to prove his intent to distribute the marijuana.[2]

■ The standard for appellate review of the sufficiency of evidence to support a criminal conviction is stated in *State v. Dulany*, 781 S.W.2d 52 (Mo. banc 1989):

"On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt."

2. *See, e.g., State v. Parrish*, 852 S.W.2d 426 (Mo. App.1993). In *Parrish*, when the police arrested the defendant, they found in the kitchen rock-like substances, one of which contained .23 grams of cocaine base. 852 S.W.2d at 428. On appeal of his conviction of possession of a controlled substance with intent to sell it, the court held that evidence that, two hours before his arrest, the defendant had sold cocaine from the kitchen area where several "rocks" were scattered about on the counter, was sufficient to establish his intent to sell on the occasion of the possession for which he was convicted. *Id.* at 429. Because Defendant in the instant case does not challenge the sufficiency of the evidence to prove his intent to distribute, we do not decide whether the quantity and packaging of the marijuana provided sufficient circumstantial evidence of his intent to distribute.

*Id.* at 55[2–3] (citation omitted). The *Dulany* standard applies to both direct and circumstantial evidence cases. *State v. Grim,* 854 S.W.2d 403, 405–07[2] (Mo. banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). All evidence is reviewed by the foregoing standards no matter who submitted it. *State v. Brown,* 637 S.W.2d 395 (Mo.App.1982). "Credibility of witnesses and the weight and value to be given their testimony are matters within the province of the jury and are not for review on appeal." *State v. Jenkins,* 776 S.W.2d 59, 63[3] (Mo. App.1989).

■■■ In reviewing the sufficiency of the evidence to prove possession of a controlled substance, we are guided by additional principles. There must be evidence that a defendant knowingly and intentionally possessed the substance and was aware of its presence and nature. *State v. Garza* 853 S.W.2d 462, 464[3] (Mo.App.1993). However, "[a]ctual, physical possession of a controlled substance is not required to establish the element of control." *State v. Johnson,* 811 S.W.2d 411, 413[3] (Mo.App.1991). Possession of illegal drugs may be proved by circumstantial evidence from which knowledge may be inferred. *Garza,* 853 S.W.2d at 464[4]. Thus, exclusive control over the place where illicit drugs are found raises an inference of that person's conscious and knowing possession or control of those substances. *State v. Allen,* 817 S.W.2d 526, 527[4] (Mo.App.1991). Moreover, a jury can consider the amount and value of drugs as tending to show a defendant's conscious and knowing possession of the drugs. *State v. Love,* 831 S.W.2d 631, 634[7] (Mo.App.1992).

Defendant argues that he did not have exclusive possession of Room 106 because motel management personnel, maids, and maintenance employees had equal access to the room; thus, as a matter of law, a jury could not reasonably infer his conscious and knowing possession or control of the marijuana solely because he rented the room. Continuing, he asserts, there was no other evidence that connected him with the marijuana.

We disagree with Defendant's view of the evidence. Defendant rented the motel room himself, retained the key, and was the sole rental occupant of the room from the time he checked in until the marijuana was found. He requested no maid service, a fact from which the jury could have inferred his intention to exercise exclusive control over the premises. We conclude this evidence established Defendant's exclusive control over the motel room, thus entitling the jury to infer Defendant's conscious and knowing possession of the substance found in the room. *Compare Mathis v. State,* 204 Ga.App. 896, 420 S.E.2d 788, 790–91 (1992); *Howard v. State,* 815 P.2d 679, 683–84 (Okl.Cr.1991).

Defendant complains that only the motel manager was questioned by police; no other employees who had access to the room were questioned, and police did not ascertain the identity of the immediately prior occupant of the room. At most, the possibility that the sack of marijuana had been left in the room (apparently in plain view until Defendant covered it with the bedspread) by an employee or prior occupant, and went undetected by Defendant, presented a factual dispute for the jury. *Compare Allen,* 817 S.W.2d at 527. The trial court did not err in submitting the case to the jury.

We affirm the judgment.

FLANIGAN and MONTGOMERY, JJ., concur.