STATE of Missouri, Plaintiff–
Respondent,

v.

Wayne J. SUMLIN, Defendant–Appellant.

Wayne J. SUMLIN, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17829, 20191.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 6, 1996.

Lew Kollias, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Wayne Sumlin (defendant) was convicted, following a jury trial, of selling cocaine, a controlled substance and sentenced to imprisonment for a term of 10 years. §§ 195.211.1 and 558.011.1(2), RSMo Supp. 1990. Following his incarceration defendant filed a motion for post-conviction relief based on Rule 29.15. The Rule 29.15 motion was dismissed because it was not filed within the time required by Rule 29.15(b).

Defendant appeals the judgment of conviction in his criminal case (No. 17829) and the order dismissing his Rule 29.15 motion (No. 20191). The appeals have been consolidated pursuant to Rule 29.15(*l*) as it existed when the post-conviction motion was filed.

The judgment of conviction and the order dismissing the Rule 29.15 motion are affirmed.

*No. 17829*

Alan Foust, a highway patrol narcotics investigator, and Clifford Hodge, a Poplar Bluff police officer assigned to the Southeast Missouri Drug Task Force, went to a business in Sikeston, Missouri, known as "Ella's Grocery Store." Officer Hodge asked a young woman who was outside the store where Gary Warfield was. The young woman entered the store. Shortly thereafter, defendant came out of the store. Defendant said Warfield would be out shortly.

A short time later, Gary Warfield appeared. Hodge had a conversation with Warfield about purchasing an ounce of cocaine. Hodge asked the price. Warfield answered, "[T]he same as last time, $2,000.00." Warfield told Hodge and Foust to come back in 10 or 20 minutes. Defendant was standing near Warfield and Hodge at the time of the conversation.

The officers left. When they returned a short time later, Warfield and defendant were there. Warfield asked to see the money. Hodge showed him the money, and defendant handed a package of cocaine to Foust. After Foust checked the cocaine, Hodge handed the money to Warfield.

Defendant told Foust that if he needed anything again to come to the same location. As defendant walked away, Officer Foust asked for a name. Defendant answered, "Wayne, just ask for Wayne."

During cross-examination of Officer Hodge at trial, defendant's attorney observed that the incident report Hodge prepared did not include that defendant said, " 'Ask for Wayne,' gave a name or anything? [sic]" Hodge responded that he did not recall hearing the statement.

During closing argument the prosecuting attorney discussed the questioning of Officer Hodge. He told the jury:

Remember [defendant's attorney] asking him if [Officer Hodge] heard the defendant say, "I am Wayne. Catch me here later"? [sic] He said, "[N]o, I didn't remember that." As Cliff Hodge sat here with his right side to the jury, how many of you noticed a hearing aid in his right ear?

Who does [defendant] want to know in this semi-crowded street that he has he [sic] just completed a drug transaction? "Call me, Wayne. Catch me any time." He was saying that to Alan Foust as he walked away. That's why Cliff Hodge didn't hear it. He wears a hearing aid.

The prosecutor also suggested during closing argument:

Now sometimes you have possibly sat back in your easy-chair watching the news, and you think well, golly, what can I do about it? You see every day some drug transaction or something taking place, and you say that's somewhere else. I can't do anything about that. Have you ever felt like you needed to do something to protect your children, your grandchildren? What can you do about it? Today is your opportunity. Today's the day that you can do something about it. There is something you can do.

Ladies and Gentlemen, when you go to the jury room, you can find [defendant] guilty of selling almost an ounce of cocaine to Officers Hodge and Faust [sic], and then sentence him to a term in the penitentiary. It won't stop the drug transactions. It will stop this drug transaction. It will stop this drug dealer.

But the only other thing you can do is you can send a message. You can send a message to the other drug dealers that are still out there that we are going to put a stop to it. We are going to put a stop to it today. We are not going to tolerate people poisining [sic] lives of other people, other adults, other children by selling drugs.

He stated that defendant received income from selling controlled substances, suggesting:

How did he get by? That's easy, that's two thousand dollars worth of dope, two thousand dollars in cash. That's how you get by. You deal selling drugs, make your money that way.

Finally, in suggesting that the jury should impose the maximum sentence if it found defendant guilty, the prosecutor argued:

Think about those persons this man is selling it to. Think about those persons, yes, changed their lives permanently, for a number of years. Changed their family's [sic] lives. How long have they been sentenced to cocaine addiction? Think about how they serve out those sentences.

Defendant's first point is directed to statements the prosecuting attorney made in closing argument. Defendant complains that the prosecutor's reference to Officer Hodge's hearing aid amounted to arguing facts not in evidence. He complains that the prosecutor "personalized harm to jurors' children and grandchildren" and characterized defendant

as "a drug dealer whose prior drug transactions have destroyed the lives of past unnamed buyers." He contends the trial court committed plain error in allowing these arguments.

■ Defendant did not object at trial to the parts of the closing argument about which he now complains and did not raise those matters in his motion for new trial. They have not been preserved for appellate review. Rule 29.11(d); *State v. Lambert*, 904 S.W.2d 582, 583 (Mo.App.1995). Defendant recognizes this in asking for plain error review. *See* Rule 29.12(b). Plain errors are errors affecting substantial rights that result in manifest injustice or miscarriage of justice. Rule 30.20.

An appellate court should rarely grant relief on assertions that the trial court plainly erred in not *sua sponte* taking remedial action during closing argument. *[State v.] Watson*, 839 S.W.2d [611] at 617 [ (Mo.App.1992) ]. In the absence of a specific request for relief, any action taken by the trial court is uninvited interference with summation and may itself be error. *Id.* Substantial latitude is allowed during closing argument and, under plain error review, improper argument does not justify relief unless the defendant has demonstrated that the argument had a decisive effect on the jury. *Id.*

*State v. Plummer*, 860 S.W.2d 340, 349 (Mo. App.1993). *See also, State v. Moorehead*, 875 S.W.2d 915, 918 (Mo.App.1994); and *State v. Baldridge*, 857 S.W.2d 243, 247 (Mo.App. 1993).

■ The first part of Point I is directed to the prosecutor's reference in closing argument to the fact that Officer Hodge wore a hearing aid. Defendant argues this was an argument of facts not in evidence.

This court finds no error, plain or otherwise, in the trial court's failure to address the prosecutor's comments about Officer Hodge wearing a hearing aid. The comments about Officer Hodge's hearing aid were directed to whether defendant made the remark about which Officer Foust had testified. Defendant, by eliciting testimony that Officer

Hodge did not recall hearing defendant's remark, questioned Officer Foust's credibility.

■ The jury is the sole judge of witnesses' credibility. *State v. Sherman*, 637 S.W.2d 704, 707 (Mo. banc 1982); *State v. Franklin*, 854 S.W.2d 55, 57 (Mo.App.1993); *State v. Parrish*, 852 S.W.2d 426, 428 (Mo. App.1993); *Ray v. State*, 644 S.W.2d 663, 666 (Mo.App.1982). The prosecutor reminded the jury that Officer Hodge was wearing a hearing aid when he testified obviously inferring that Officer Hodge's ability to hear was impaired; that this could be the reason he did not recall hearing the remark attributed to defendant.

■ "[A] prosecutor has the right to draw any inference from the evidence which he or she believes in good faith to be justified." *State v. Plummer, supra,* at 350. A witness' demeanor is always assumed to be in evidence. *State v. Davis,* 877 S.W.2d 669, 674 (Mo.App.1994). Physical appearance is part of that demeanor. Officer Hodge's physical appearance included his wearing a hearing aid.

One of the ways a physical condition may be evidenced is the showing of external facts that point to the existence of the condition. *See* 2 Wigmore, *Evidence* § 219 (Chadbourn rev. 1979), and 1A Wigmore, *Evidence* § 190 (Tillers rev. 1983). The prosecutor was entitled to infer that Officer Hodge's hearing was impaired at the time of trial since he wore the hearing aid. Absent other explanation it was inferable that the disability was not of immediate origin; that it existed at the time the crime was committed.

■ The second part of Point I complains that the prosecutor "personalized harm to jurors' children and grandchildren." Defendant argues that the trial court committed plain error in not, *sua sponte*, injecting itself into the state's closing argument to prevent that part of the argument.

■ Permissible parameters of closing argument are outlined in *State v. Plummer, supra.*

The state is permitted to argue such propositions as the prevalence of crime in the community and the personal safety of

its inhabitants, and such pleas may call upon common experience. *State v. Clemmons,* 753 S.W.2d 901, 909 (Mo. banc), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). The state may further argue that conviction of the defendant is part of the jury's duty to prevent crime. *[State v.] Debler,* 856 S.W.2d [641] at 651 [ (Mo. banc 1993) ]. The prosecutor may refer to the need for strong law enforcement as a deterrent to crime and infer the effect of the jury's failure to perform its duty and uphold the law. *State v. Gilmore,* 681 S.W.2d 934, 944 (Mo. banc 1984).

All of the above are legitimate arguments, as long as the prosecutor stays within the record and the reasonable inferences to be drawn therefrom and does not make an inflammatory appeal to the jurors to arouse their personal hostility toward or personal fear of the defendant, such as implanting in their minds the fear that the defendant's acquittal will endanger their own personal safety or that of one of their family members. *State v. Evans,* 406 S.W.2d 612, 616–17 (Mo.1966); *State v. Steward,* 564 S.W.2d 95, 98–99 (Mo.App. 1978); *State v. Heinrich,* 492 S.W.2d 109, 114 (Mo.App.1973).

860 S.W.2d at 350.

The prosecutor's statement that convicting defendant would not stop drug transactions but would stop this drug dealer was improper. *State v. Crawford,* 539 S.W.2d 633, 637 (Mo.App.1976), citing *State v. Raspberry,* 452 S.W.2d 169, 172 (Mo.1970). Likewise the query about whether the jury had ever wanted to do something to protect their children and grandchildren was improper. *State v. Plummer, supra.* However, both references were fleeting and not made repetitiously. Under these circumstances, considering the strong evidence of defendant's guilt, the prosecutor's dalliances from otherwise proper argument do not call for relief under the plain error rule. *State v. Dooley,* 549 S.W.2d 677, 681 (Mo.App.1977); *State v. Crawford, supra,* at 637.

■ In the third and final part of Point I defendant contends the trial court committed plain error in not addressing, *sua sponte,* the prosecutor's characterization of defendant as

"a drug dealer whose prior drug transactions ... destroyed ... lives of past unnamed buyers."

The state argues that the prosecutor's characterization of defendant as a drug dealer was inferable from defendant's invitation to Officer Foust to come back if he ever needed anything and to "ask for Wayne." The state points to the fact that this occurred on a public street in Sikeston in view of several people; that defendant's "flagrant attitude about selling a controlled substance, in addition to his invitation to Foust to come back whenever he needed anything, indicated that he was experienced with selling drugs"; that this conduct warranted defendant being described as a "drug dealer."

■ Similar closing arguments have been the subject of other appeals. Uncomplimentary remarks have been permitted so long as the records provided evidentiary support for the characterizations used. Trial courts have wide discretion in establishing the scope of permissible argument by counsel. *State v. Taylor,* 508 S.W.2d 506, 514 (Mo.App.1974).

In *State v. Dooley, supra,* the court found no error in a closing argument referring to a defendant as a "drug dealer" because "that argument was within the evidence that had been offered to the jury." 549 S.W.2d at 681. (Defendant was tried for sale of a controlled substance after MDA and LSD was obtained through efforts of that defendant.)

In *State v. Taylor, supra,* there was evidence that defendant sold heroin. The court held the trial court did not abuse its discretion in permitting the prosecutor to refer to that defendant as a "pusher." 508 S.W.2d at 514.

The same principle has been applied in other types of criminal cases. In *State v. Nichelson,* 546 S.W.2d 539 (Mo.App.1977), defendant was called a professional car thief based on evidence that he possessed a keymaker, dent puller and blank keys. In *State v. Holiday,* 572 S.W.2d 178 (Mo.App.1978), it was argued that a defendant charged with stealing an automobile "operate[d] in a 'professional manner.'" *Id.* at 179. The court held this was proper argument based on defendant's possession and use of a puncher

to gain access to and steal the car; his possession of title forms, a notary seal for title transfer and torches and other equipment for use in altering the car's appearance and changing its serial numbers.

The trial court did not commit plain error by not precluding the prosecutor from arguing defendant was a drug dealer and suggesting the offense was serious because of the effect drugs have on persons to whom they are sold. Point I is denied. No. 17829 will be affirmed.

### No. 20191

 Point II is directed to defendant's appeal of the order dismissing his Rule 29.15 motion.

The motion court found that the transcript in the appeal of defendant's underlying criminal case was filed December 13, 1991; that, thereafter, defendant filed his Rule 29.15 motion in the Circuit Court of Scott County February 21, 1992. It concluded that the Rule 29.15 motion was not timely filed because it was filed more than 30 days after the transcript was filed in defendant's direct appeal of his criminal conviction contrary to requirements of Rule 29.15(b) as they existed on that date.

Point II asserts that the motion court erred in dismissing defendant's Rule 29.15 motion "because the absolute filing deadline imposed by Rule 29.15(b) operated to deny [defendant] due process of laws ... in that the unreasonable time restrictions contained in the rule prevented adequate postconviction review of [defendant's] challenge to the constitutionality of his judgment and sentence after trial for sale of cocaine."

"The time limitations contained in *Rules 24.035* and *29.15* are valid and mandatory." *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc), *cert. denied sub nom. Walker v. Missouri,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). The motion court's findings and conclusions are not clearly erroneous. No. 20191 will be affirmed.

*Dispositions of Appeals*

The judgment of conviction in No. 17829 is affirmed. The order dismissing defendant's Rule 29.15 motion in No. 20191 is affirmed.

PREWITT, P.J., and CROW, J., concur.