

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112000 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable John N. Borbonus |
| KEITH L. HILL, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 24, 2024 |

## Introduction

Keith L. Hill ("Hill") appeals from the trial court's judgment following jury convictions on first-degree murder, first-degree robbery, first-degree burglary, and two associated counts of armed criminal action. In his sole point on appeal, Hill argues the trial court plainly erred in failing to give a self-defense instruction sua sponte. Because Hill was an initial aggressor who forcibly entered Victim's home and initiated the physical confrontation with Victim, Hill did not inject sufficient evidence to support a self-defense instruction. For that reason, the trial court did not plainly err for failing to sua sponte instruct the jury on self-defense. Accordingly, we affirm the trial court's judgment.

## Factual and Procedural History

The following facts are limited to only those necessary to resolve the point on appeal and are presented in the light favorable to Hill's claim of self-defense.[1]

Hill and Victim were neighbors. Victim had previously called 911 because Hill was banging on his door demanding money. On or about April 19, 2019, after neighbors had observed Hill and Victim arguing the day before, Victim failed to show up to work. Victim's Co-worker went to check on Victim. Co-worker spoke with Hill, who denied having seen Victim. Police found Victim dead inside his home surrounded by blood spatter. Victim had been hit fifteen to seventeen times with a blunt object.

The police arrested and interviewed Hill, who initially denied any involvement in the offense. Hill then admitted he had been inside Victim's home but that Victim had been alive when he left. Hill eventually admitted he had gone to Victim's home and stolen property, and that Victim was dead when he left. Hill explained that he had gone to Victim's home to ask for thirty dollars to buy drugs. Victim at first refused, saying he did not want to feed Hill's addiction, but Hill continued asking and said he would use the money for bus fare to go to work. Victim relented and offered Hill fifteen dollars, but Hill was not satisfied. Victim tried to close the door on Hill, but Hill pushed it back with enough force to cause Victim to fall backwards and hit his head on a table. Victim was "bleeding bad" and kept touching the top of his head. Victim managed to sit in a chair, and Hill went to retrieve a towel for him. When Victim threatened to call the police, Hill "snatched" Victim's phone out of his hands because Hill "couldn't let him call the police." Victim began struggling, and Hill shoved him back down into the chair. Victim kept trying to get up, and Hill kept pushing him back down into the chair. Victim reached out

---

[1] See State v. Kendrick, 550 S.W.3d 117, 121 (Mo. App. W.D. 2018) (quoting State v. Bruner, 541 S.W.3d 529, 534 (Mo. banc 2018)).

2

and got hold of a lamp, which he swung at Hill, hitting Hill in the arm. Hill grabbed the lamp and hit Victim with it multiple times, swinging it back and forth, until Victim died. Hill then left. Hill drove Victim's car to a convenience store and used Victim's debit card. Hill later threw the lamp and some other items into a river.

The case proceeded to trial. Hill testified in his own defense, denying any involvement and claiming he was coerced into the confession.

Among the evidence presented by the State was the detective's testimony and corroborating physical evidence that Victim's door had been forced open. A piece of the door frame had broken off and fallen to the floor.

No self-defense instruction was requested or given. The jury convicted Hill on all counts. The trial court sentenced Hill to life without the possibility of parole for first-degree murder to be served consecutively to a sentence of thirty years in prison for the associated count of armed criminal action. Hill also received concurrent sentences of thirty years each for first-degree robbery and the associated count of armed criminal action as well as fifteen years for first-degree burglary. This appeal follows.

## Point on Appeal

In his sole point on appeal, Hill argues the trial court plainly erred in failing sua sponte to instruct the jury on self-defense because he injected the issue of self-defense during his police interview when he stated that Victim attacked him with a lamp.

## Standard of Review

Hill acknowledges that he did not request a self-defense instruction at trial and thus did not preserve his claim for appellate review. See Rule 28.03[2] ("No party may assign as error the

---

[2] All Rule references are to Mo. R. Crim. P. (2024), unless otherwise noted.

giving or failure to give instructions or verdict forms unless the party objects thereto . . . ."). Hill nonetheless requests we exercise our discretion to conduct Rule 30.20 plain-error review because it is error for the trial court to not give a self-defense instruction if substantial evidence is injected to support it. See State v. Hobson, 522 S.W.3d 270, 274–75 (Mo. App. S.D. 2016) (internal citation omitted).

"Rule 30.20 provides that, whether the alleged errors are briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the error has resulted in manifest injustice or miscarriage of justice." State v. Kendrick, 550 S.W.3d 117, 120–21 (Mo. App. W.D. 2018) (quoting State v. Hunt, 451 S.W.3d 251, 260 (Mo. banc 2014)). Plain-error review is a two-step inquiry in which we first assess whether there was "evident, obvious, and clear" error "affecting substantial rights" and then assess whether that plain error resulted in "manifest injustice or miscarriage of justice[.]" Id. (quoting Hunt, 451 S.W.3d at 260).

"In determining whether the [trial] court erred in refusing to submit an instruction on self-defense, the evidence is viewed in the light most favorable to the defendant." Id. (quoting State v. Bruner, 541 S.W.3d 529, 534 (Mo. banc 2018)). "However, this standard does not require the Court to disregard all evidence contrary to giving the self-defense instruction." State v. Tate, 561 S.W.3d 483, 487 (Mo. App. E.D. 2018) (citing Bruner, 541 S.W.3d at 534 n.2).

Discussion

A defendant is not entitled to a self-defense instruction unless he injects substantial evidence into the record supporting the instruction. Kendrick, 550 S.W.3d at 121 (citing Bruner, 541 S.W.3d at 534–35); see also Section 563.031.5.[3] Although Hill did not request a self-

---

[3] All Section references are to RSMo (2016), unless otherwise noted.

4

defense instruction, he maintains he injected the issue during his police interview when he explained that Victim initiated a physical confrontation with him by attacking him with a lamp, to which Hill responded by taking the lamp from Victim and hitting him with it enough times to kill him. However, even viewing the facts most favorably to Hill, the record shows that Hill failed to inject substantial evidence to support giving a self-defense instruction. See Kendrick, 550 S.W.3d at 121 (citing Bruner, 541 S.W.3d at 534–35).[4]

In particular, "[i]n cases where the defendant is the initial aggressor, the court is precluded from giving a self-defense instruction." Tate, 561 S.W.3d at 488 (finding the trial court did not err by refusing to give the defendant's proffered self-defense instruction where the evidence, even viewed in the light favorable to the defendant, showed the defendant was the initial aggressor and that the victim's use of force was lawful). "An initial aggressor is one who first attacks or threatens to attack another." State v. Rice, 597 S.W.3d 322, 327 (Mo. App. E.D. 2019) (internal quotation omitted). The evidence is clear here that Hill was the initial aggressor. By his own account, Hill pushed open Victim's door to gain entry into Victim's home, causing Victim to fall back and hit his head. The State adduced additional evidence that the door frame was broken in a way that was consistent with forcible entry. Courts have upheld a finding that the defendant provoked the incident and was deemed to be the initial aggressor under similar circumstances. See Tate, 561 S.W.3d at 489 (finding the evidence did not support giving a self-defense instruction due to the defendant being the initial aggressor where the defendant went to the house in violation of an order of protection, walked around the back, and climbed up onto an

---

[4] Additionally, we note that Hill neglected to include the applicable Missouri Approved Instruction–Criminal in his Appellate Brief or in his Appendix. See Rule 84.04(e) ("If a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief."), 84.04(h)(3) ("A party's brief shall be accompanied by a separate appendix containing . . . [t]he complete text of any instructions to which a point relied on relates."). In this case, however, we elect to exercise our discretion to review the appeal despite this deficiency because the omission has not impaired meaningful review given our holding. See Kendrick, 550 S.W.3d at 121 n.2.

5

air conditioning unit with a firearm in hand and fired two shots through the second story window). Moreover, forcibly entering Victim's home was not Hill's only aggressive act. After Victim said he was going to call the police, Hill "snatched" Victim's phone away and shoved Victim down. Only then did Hill allege that Victim swung a lamp at him. Under this series of aggressive, provocative acts by Hill in forcing his way into Victim's home and repeatedly harming Victim, it strains credulity for Hill to argue that Victim was the initial aggressor. See id. Because the evidence showed Hill was the initial aggressor, he was not entitled to a self-defense instruction, thus the trial court did not commit plain error. See id.

Even were we to entertain Hill's attempt to narrow the focus of the confrontation merely to the moment Victim swung the lamp at Hill, no evidence was injected that "would lead a reasonable person to believe that [Hill] was justified in using physical force to protect himself from the [Victim's] use or imminent use of ***unlawful force.***" Id. (emphasis added); see Section 563.031.1. As the State argues, a defendant cannot assert self-defense if the victim was lawfully asserting force against the defendant. Tate, 561 S.W.3d at 489–90. Victim was entitled to defend himself against Hill in his own home, as codified by the Castle Doctrine. See id.; see also State v. Clement, 661 S.W.3d 396, 403 (Mo. App. E.D. 2023) (citing Section 563.031.2(2)) ("Unlike the general principle of self-defense or defense of others, a person need not face death, serious physical injury or a forcible felony to respond with deadly force under Missouri's codified Castle Doctrine.").

Further, for Hill's claim of self-defense, "[d]eadly force is only justifiable when the defendant reasonably believes that such deadly force is necessary to protect himself from death, serious physical injury, or any forcible felony." Kendrick, 550 S.W.3d at 124 (alteration in original) (quoting Bruner, 541 S.W.3d at 538). Courts have denied a self-defense (or defense-of-

6

others) instruction when the evidence showed the amount of force used far exceeded that which would have been reasonably necessary to defend against the victim's actions. See State v. Caldwell, 655 S.W.3d 374, 379 (Mo. App. W.D. 2021) (internal quotation omitted). "Missouri courts have repeatedly held that 'deadly force cannot be used to repel a simple assault and battery.'" State v. Sinks, 652 S.W.3d 322, 338 (Mo. App. E.D. 2022) (internal quotation omitted). "To justify the use of deadly force, '[s]ome affirmative action, gesture, or communication by the person feared indicating the immediacy of danger, the inability to avoid or avert it, and the necessity to use deadly force as a last resort must be present.'" Id. at 652–53 (internal quotation omitted). Here, even assuming Victim swung at Hill with the lamp, Hill promptly disarmed Victim by taking the lamp, obviating any threat Victim allegedly posed. No substantial evidence was injected that Hill responded reasonably when he proceeded to strike Victim with the lamp as many as seventeen times, crushing Victim's skull and killing him. See Kendrick, 550 S.W.3d at 124 (citing Bruner, 541 S.W.3d at 538).

For all of the aforementioned reasons, the trial court did not plainly err by not sua sponte instructing the jury on self-defense. See id. at 121 (citing Bruner, 541 S.W.3d at 534–35). The point is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Lisa P. Page, P.J., concurs.
Rebeca Navarro-McKelvey, J., concurs.

7